I hereby certify that this correspondence is being deposited with the United States Postal Service "EXPRESS MAIL POST OFFICE TO ADDRESSEE" service under 37 CFR § 1.10 via express mail label number EL 995015427 US with sufficient postage addressed to: Board of Patent Appeals and Interferences, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450, on the date shown below.

Dated: November 29, 2005   Signature: _____
Roger A. Heppermann

**ATTACHMENT B**

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re Patent Application of:
Charles Orleskie et al.

Application No.: 10/119,283

Filed: April 9, 2002                                Art Unit: 2855

For: AVERAGING ORIFICE PRIMARY FLOW              Examiner: Corey D. Mack
ELEMENT

## APPELLANT'S REQUEST FOR REHEARING OF THE DECISION OF THE BOARD OF PATENT APPEALS AND INTERFERENCES PURSUANT TO 37 C.F.R. § 41.52(a)

Board of Patent Appeals and Interferences
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Pursuant to 37 C.F.R. § 41.52(a), Appellant, through the undersigned attorney, hereby requests rehearing of the decision of the Board of Patent Appeals and Interferences (the "Board") in an appeal taken to the Board in the above-identified application, which decision was mailed by the Board on September 29, 2005.

Appellant submits that the Board, as evidenced by the Board's decision, misapprehended the importance of, or simply failed to consider the definitional distinction between a bore" in an elongated flow restriction member and an "aperture" in a planar flow restriction member as presented by the Appellant. As a result, the Board misunderstood the importance in the structural differences between these two terms when analyzing the prior art cited by the

1

Examiner in rejecting claims 1-15 over U.S. Patent No. 6,543,297 ("Kleven '297") in view of U.S. Patent No. 4,884,460 ("Nowacki") and claim 20 over Kleven '297 in view of Nowacki and U.S. Patent No. 6,311,568 ("Kleven '568"). In a similar manner, the Board misapprehended or failed to consider the importance of the recited "*planar* flow impedance means" (claims 1-7 and 20) or the "disk" (claims 8-15) and the effect of these term in distinguishing the claimed invention over the prior art cited by the Examiner.

Still further, Appellant submits that the Board failed to understand or to consider the underlying technological principles at work in the prior art, and in particular in the Nowacki patent, in relying on certain statements in the Nowacki patent to support its decision that the prior art provides a "teaching" to make the combination of elements recited by each of claims 1-15 and 20. As a result of this misunderstanding, the Board reached an erroneous conclusion with respect to the existence of a motivation or a teaching within the prior art to make the claimed combinations of elements.

As background, Appellant argued extensively in prior briefing before the Board that the prior art documents of Nowacki and Kleven '297 do not disclose one or more critical elements recited by each of claims 1-15 and 20 (the claims at issue on rehearing), and in particular, do not disclose a plurality of circular **apertures** eccentrically disposed with respect to the center point of a **planar** flow impedance means, especially one in the form of a **disk**. Appellant extensively argued the distinction between Nowacki's disclosed "bores" and the Appellant's claimed "apertures" as well as to the distinction between Nowacki's disclosed elongated restrictive structure and the claimed planar flow impedance means in the form of a disk. See Appeal Brief at 7-8 (stating that "aperture" is not synonymous with "bore" because a "bore" implies a lengthwise cylindrical cavity while an "aperture" is synonymous with a hole); Reply Brief at 4-6

(providing a thorough discussion of the structural differences between the Nowacki device and the Appellant's claims).

The Examiner recognized and noted Appellant's contention that an "aperture" is a "hole" or an "opening," and "not a tube or bore" and admitted that this distinction "raises a significant question" regarding a "critical element." Examiner's Answer at 10. While the Examiner stated that such terms are "somewhat generic and lack the specificity necessary for a critical feature" and further stated without support that such terms are "all widely used by those of ordinary skill in the art interchangeably," the Examiner proceeded to define bores as holes that are usually cylindrical (citing Merriam-Webster's Collegiate Dictionary, Tenth Edition). *Id.* Thus, the Examiner's own definition of a bore includes a length dimension, which was identified by Appellant as a critical distinction between this element and the recited "aperture."

While the Board acknowledged Appellant's argument that a bore is not a substitute for an aperture, the Board proceeded to disregard this distinction or failed to appreciate the importance of this distinction, and thus misunderstood the Appellant's arguments regarding motivation. In fact, it is unclear from the Board's decision how the Board construed the term "aperture" and whether this construction differed in some manner from the "bores" of Nowacki. While not explicitly stating as much, to reach its conclusion that the prior art renders claims 1-15 and 20 obvious, the Board must have either reached a finding that (1) Nowacki's bores are the recited apertures and that, therefore, the combination of Nowacki and Kleven '297 includes all of the claimed elements, or (2) that while not disclosing apertures, Nowacki teaches that apertures could be substituted for the bores disclosed by Nowacki.

If the Board's decision was based on a finding that Nowacki's bores meet the recited "aperture" limitation, the Board failed to address the Appellant's contentions pertaining to the

3

definitional differences between a bore and an aperture and, in particular, between a bore disposed in the elongated wasp-waisted restriction element of Nowacki and an aperture disposed in the recited *planar* flow impedance means (claims 1-7 and 20) such as one in the form of a disk (claims 8-15). Thus, if it is the Board's holding that some combination of elements found within Nowacki and Kleven '297 would produce the structure recited by each of claims 1-15 and 20, the Board has failed to explain the manner in which the Nowacki bores disposed in an elongated wasp-waisted restriction element could be construed to be a plurality of apertures disposed in a planar or disk shaped flow impedance element, especially in light of Appellant's arguments pertaining to the structural differences between these elements.[1] Further clarification by the Board on these points is necessary as the Board did not discuss or examine the meaning of an aperture disposed in a planar flow impedance means and whether or not the bores of the Nowacki device meet or do not meet this recited structure. As a result, the Board has not provided any basis for a conclusion that combining the wasp-waisted restrictive element of Nowacki with the structure of Kleven would in fact produce the invention recited by any of claims 1-15 or 20 having multiple apertures in a disk or other planar flow impedance means.

While the Board may have intended to hold that the combination of the Kleven '297 device with the Nowacki device produces the claimed combination, it appears more likely that the Board's decision is fundamentally based on the finding that, even though the bores within the elongated flow impedance element of Nowacki constitute different structure than the recited apertures disposed in a planar or disk-shaped flow impedance means, the "teachings" of

---

[1] More particularly, the Board has not even attempted to support a finding that substituting the elongated flow restriction element of Nowacki (having four cylindrical bores disposed between two counterbores) for the single aperture plate of Kleven would produce a device having a plurality of apertures on a planar or disk-shaped flow impedance means, as recited by each of claims 1-15 and 20.

Nowacki provide a motivation or a suggestion to replace the bores of the Nowacki device with the recited apertures. In this case, however, the Board has misunderstood the Appellant's arguments pertaining to the lack of motivation in Nowacki for making this substitution, as well as the technical underpinnings of the Nowacki disclosure itself which go against this finding.

In affirming the Examiner's decision with respect to claims 1-15 and 20, the Board relied heavily upon Nowacki, which discloses an air flow sensing venturi device having a flow restriction with four axially extending cylindrical bores (40) which "have been found to produce superior results as compared with a conventional single large bore" (col. 1, lines 45-48; col 2, lines 50-56). The Board's decision placed a great deal of importance on Nowacki's statement that the advantages of using a plurality of cylindrical bores over a single bore include obtaining a stronger signal, better control and less tumbling of air.

However, the Board apparently reached the conclusion that Nowacki's discussion of the advantages of using a plurality of smaller bores instead of a single large bore additionally suggests to one of ordinary skill in the art that the same advantages could be obtained by substituting a plurality of small apertures for the single large aperture in the Kleven '297 device. Unfortunately, the Board provides no support for this conclusion. Moreover, this conclusion is not supported by any evidence on the record, including Nowacki and Kleven '297. To the contrary, in reaching this conclusion, the Board ignored or misunderstood Appellant's arguments pertaining to the manner in which the significant structural differences between an *aperture* disposed in a *planar* flow impedance means and a *bore* disposed in an *elongated* flow restriction element relate to the purported advantages discussed in Nowacki. Additionally, the Board ignored the significant technical differences between Nowacki's elongated restrictive element having bores and the recited planar or disk-shaped structure having apertures. Finally, the Board

failed to understand the significant technical misstatements in Nowacki that undermine the Board's finding of such a "teaching."

Applicants argument is fundamentally based on the fact that there is a significant structural difference between the apertures disposed in a planar flow impedance means (as recited by the claims at issue) and bores disposed in an elongated, wasp-waisted flow restriction element (found in the Nowacki device). It is this distinction that makes the purported advantages discussed with respect to Nowacki's bores irrelevant or technically incorrect and, in either case, not pertinent to the Kleven '297 device. As a result, it is Appellant's contention that Nowacki's suggestion to use multiple bores in an elongated flow restriction element does not amount to a motivation or a suggestion to use multiple apertures in a planar or disk-shaped flow impedance element.

It is important to note that the Nowacki disclosure is limited to discussing advantages purportedly obtained by using four small "bores" as compared to one large "bore" or "hole" in an elongated flow restriction element. As noted previously, it is Appellant's contention that the significant structural differences between an aperture in a *planar* flow impedance means and a bore in an *elongated* flow restriction element make the statement of advantages in the Nowacki device irrelevant or inapplicable to the Kleven '297 device.[2] In particular, it does not follow, and there is no evidence in the record to support a conclusion that the advantages discussed with respect to the Nowacki device could or would be obtained in the Kleven '297 device when substituting multiple small "apertures" for one large "aperture" in a planar or disk-shaped flow impedance structure.

---

[2] Or as discussed in more detail below, simply incorrect as a matter of fact.

First of all, there is simply no evidence in the record that a single large aperture in a planar flow impedance means suffers the problems discussed with respect to the Nowacki device which are problems related to the presence of a single elongated bore, i.e., the issues of a weak signal, "tumbling of air" and poor "control." Significantly, these problems are all associated with the presence of an *elongated bore*, not problems associated with an aperture in a planar member.[3] While the Board has apparently assumed that these problems exist in the planar or disk-shaped, single apertured structure of Kleven '297, neither the Examiner nor the Board has provided any evidence that such problems exist in the Kleven '297 device. Still further, there is no real reason to believe that these problems exist in the apertured structure of Kleven '297 because it is the very difference between a bore in an elongated flow restriction element and an aperture in a planar flow impedance element (i.e., the length dimension) that gives rise to the problems present in the Nowacki device. In any event, until there is some evidence in the record or reason to believe that the problems being addressed in the Nowacki device exist in the single-apertured, planar flow impedance means of Kleven '297, it does not make sense to find that one skilled in the art would be motivated by Nowacki to solve these "problems" in the Kleven '297

---

[3] It is the length dimension of the single large bore in an elongated flow restriction element which causes the alleged problems of "tumbling of air" and poor "control" and therefore results in a weaker signal. As argued by the Appellants, apertures in a planar or disk-shaped flow impedance means do not have a significant length dimension and there is simply no evidence that they suffer from these purported problems in the first place. Unless and until the prior art recognizes that the problems of Nowacki are problems that exist in and need to be solved in the Kleven '297 device, there is no need to substitute multiple small apertures for one larger aperture to compensate for these problems.

7

device.[4] Unfortunately, the Board has simply assumed, without any evidentiary support what-so-ever, that the problems purportedly addressed by the use of multiple bores in the Nowacki device exist in the Kleven '297 device in the first place.

Moreover, even if these "problems" do exist in the Kleven '297 device, the Board simply assumes, again without any shred of evidentiary support in the record, that these problems would indeed be solved by substituting multiple apertures for the single aperture in the planar flow impedance means of Kleven '297. In other words, even if the use of multiple bores in the Nowacki device (as compared to a single bore) provides a stronger signal, better "control" or less "tumbling of air" in that elongated flow restriction element, it does not necessarily follow that using multiple apertures in a planar flow impedance element would result in a stronger signal, better "control" or less "tumbling of air" in that structure There is simply no evidence that suggests that this would be the case, nor is there any reason to believe that such evidence could be produced due to the significant structural differences between a bore in an *elongated* flow restriction element and an aperture in a *planar* flow impedance element.

The conjecture on the part of the Board that modifying the Kleven '297 device to include multiple apertures would indeed result in a stronger signal, better control or reduced tumbling of

---

[4] The Board misunderstood the importance of the Appellant's detailed discussion that the problem being solved in the present application is related to obtaining a more accurate signal in the presence of turbulence, not to obtaining a stronger signal or reducing turbulent flow. In particular, this discussion was provided, not as an argument that Nowacki must necessarily solve the same problem addressed by the present inventors, but simply to illustrate that the Kleven '297 device suffers from substantially different problems than the Nowacki device due to the substantially different uses to which these devices are put and the substantially different structural elements within these devices. This argument was instead provided to illustrate that, at the very least, Nowacki or some other prior art must provide a suggestion to solve some problem actually relevant to the Kleven '297 device in the use for which it is intended. Weak signals, turbulent flow and poor control are simply not disclosed anywhere in the prior art as being problems relevant to the Kleven '297 device, nor has the Board or the Examiner provided any evidence to that effect.

air is particularly egregious because there is significant evidence in the record supporting a conclusion that one skilled in the art would not be motivated to alter any structure besides an elongated flow impedance means in an attempt to obtain the Nowacki advantages. In particular, while the Board relies on a small portion of the Nowacki disclosure to support its finding of motivation, the Board disregards further discussion in Nowacki that defines other structural and dimensional elements (not found in or relevant to the Kleven '297 device) that are critical to achieving the purported Nowacki advantages. In a similar manner, the Board ignores significant structural differences that exist between the invention recited by claims 1-15 and 20 and the Nowacki device which are also relevant to being able to export the changes made to the Nowacki device into the Kleven '297 device.

First of all, Nowacki is filled with statements indicating the importance of other very particularized structural details that are needed to achieve the purported advantage of a "stronger" signal. For example, Nowacki discloses that the wasp-waisted restriction element includes a venturi device with ends of *different* diameters, with a smaller diameter section of uniform diameter of "significant length" having a barrier of a "particular shape" midway through the smaller diameter section. Col. 1, ll. 32-49. Nowacki goes on to particularly describe the specific structure and location of the bores which is needed to obtain the alleged benefit of a stronger signal (col. 3, l. 65-col. 4, l. 5). Still further, Nowacki explicitly states that the configuration of the bores and the structure to which these bores are attached is important in obtaining the desired benefit of a stronger signal. For example, Nowacki states:

> The four bores 40 are symmetrical about the axis of the device 10 and the bores are as large as possible within the one-half inch diameter of the counterbore 30. The bores are slightly closer to the left (large) end than to the small end and they are closer to the tube 44 than to the tube 50 *to maximize signal*. The *near equality in*

*diameter of the counterbores 30 and 32 is important* in producing proper air flow. (Col. 3, line 65 to Col. 4, line 5, Emphasis added).

Thus, Nowacki discloses specific length dimensions and positional placements that are needed for the plurality of bores to function to obtain the disclosed advantages and discusses structural limitations of other elements apart from the bores (i.e., the counterbores 30 and 32) that are important in obtaining the purported advantages. Col. 2, ll. 42-68.

Contrary to the Board's apparent contention, one skilled in the art would know from reading the Nowacki document, as a whole, that the use of multiple bores alone is not sufficient to obtain the purported advantages. Instead, one skilled in the art would know that it is the use of multiple bores in conjunction with a set of other important structural details apart from the bores that produces the purported effect of a "stronger signal."[5] In other words, when reading the Nowacki document as a whole, one skilled in the art would recognize that the advantages discussed in Nowacki result from the particular and very specialized combination of elements disclosed in Nowacki (including the use of multiple bores disposed at particular locations with respect to counterbores which, in turn, include very specific structural features) and not simply from the use of multiple bores alone. One skilled in the art therefore, reading Nowacki as a whole, would not be motivated to extract a single element from this combination of important structural details (i.e., the use of multiple bores) in an attempt to obtain the purported advantages in other devices, as is apparently suggested by the Board.[6] Put another way, the Board's

---

[5] To the extent that such an effect is actually achieved. See the discussion provided below with respect to the technical errors in Nowacki.

[6] Of course, the Board's decision does not explain how one skilled in the art could export all of the important structural details of the Nowacki device, including the plurality of bores, the counterbores disposed on either side of the plurality of bores, etc. into the Kleven '297 device and still result in a device having a *planar* flow impedance means, as recited by each of claims 1-15 and 20.

apparent conclusion that Nowacki teaches using the much simpler structure of small apertures in a planar flow impedance means to obtain the same benefits as the use of small bores in an elongated flow restriction element ignores the importance of the other significant structural details of the Nowacki device that are not found in the Kleven '297 device, but that are needed to obtain the discussed advantages.

Conversely, the Board ignores an important structural limitation recited by each of clams 1-15 and 20 that is not present in the Nowacki device and that if present in the Nowacki device, might operate to destroy the purported advantages obtained by the specific Nowacki structure. In particular, each of claims 1-15 and 20 recites a flow impedance means or a disk disposed in a device with "annular mounting flanges having . . . interior openings that correspond in shape and size to the inside cross section of the conduit [to which the flow impedance means is coupled]" (Claim 1). However, the Nowacki device does not include any structure that has "interior openings that correspond in shape and size to the inside cross section of the conduit," in this case the tubing to which the Nowacki elongated flow restriction element is attached. To the contrary, the end pieces of the elongated flow restriction element of Nowacki includes interior cross sections which are of different shapes and sizes than the air tubes to which this element is to be connected.[7] There is simply no evidence in the record, nor is it apparent based on the specific and highly particularized disclosure of Nowacki, that using multiple bores in an elongated flow

---

[7] As noted in Nowacki, the end portions 12 and 14 are designed to accept the tubing to be connected thereto (not shown) either internally (in which case the interior surfaces 18 and 24 of the end portions 12 and 14 are larger in shape and size than the interior of the tubing) or to accept the tubing externally (in which case the interior surfaces 18 and 24 of the end portions 12 and 14 are smaller in shape and size than the interior of the tubing). See Nowacki, col. 3, ll. 19-33. In either case, the internal size and shape of the restrictive flow element of the Nowacki device is different then the internal shape and size of the tube to which it is attached.

11

restriction device having ends with the same interior size and cross section as the tubing to which it is connected would result in the purported Nowacki advantages.

Finally, the Board has failed to realize, based on Appellants arguments or otherwise, that one skilled in the art would recognize that Nowacki's statement of advantage (being relied upon by the Board) is technically incorrect, and that therefore, one skilled in the art would wholly ignore this statement. As noted by the Board, Nowacki specifically states, in the context of discussing the use of a plurality of bores that "[a]s compared with a single large hole or bore of *substantially equal area*, there is 30% less restriction to flow. Therefore a stronger signal is obtained." (Nowacki, col. 3, ll. 54-56. Emphasis added). On its face, this statement provides an incorrect statement of the physical principles known to those of ordinary skill in the art, and would therefore be disregarded by one of ordinary skill in the art.[8]

In particular, this statement, when read literally, amounts an instruction that the use of multiple bores having a combined cross-sectional area that is the same as the cross-sectional area of an imaginary "single large bore" would provide less restriction to flow than the single bore and would therefore result in greater signal strength. Unfortunately, this statement is simply false, and one skilled in the art would know it immediately. In particular, one skilled in the art would know, based on the well known Bernoulli's equation, that using multiple bores having a combined area that is "substantially equal" to the area of a single large bore would provide the

---

[8] This is not the only occurrence of an incorrect, vague or ambiguous statement within the Nowacki document. In fact, this statement in conjunction with other incorrect or grossly ambiguous statements in the Nowacki document would only lead one of ordinary skill in the art to doubt the veracity of any of the Nowacki claims of advantage. For example, Nowacki states that the "near equality in diameter of the counterbores 30 and 32 is important in producing proper air flow." Col. 4, ll. 3-5. However, the counterbores 30 and 32 are specifically defined in Nowacki as having diameters of 0.375 inches and 0.5 inches, respectively. (Nowacki, col. 2, ll. 44-46). This amounts to a 25 % difference in size and cannot possibly meet the "near equality" requirement using any reasonable interpretation of that phrase. This and other such statements in Nowacki leave one skilled in the art wondering what to believe in the Nowacki document.

*same* restriction to flow, not less restriction to flow, and would therefore result in the same signal strength, not in increased signal strength.[9] In fact, it is well known in the art that an increase in signal strength is actually achieved by *reducing* the cross sectional flow area, not simply splitting it up into different spaced apart segments (as is apparently claimed by this passage of Nowacki). Recognizing that this statement is technically incorrect, one of ordinary skill in the art would not be motivated by it to even substitute a plurality of bores for a single bore of the same cross sectional area in an elongated flow restriction element (such as that of Nowacki) to achieve the greater signal strength, much less be motivated to substitute a plurality of apertures for a single aperture in a planar flow impedance element to obtain a stronger signal.[10] Thus, instead of relying on this passage as a suggestion to modify the Kleven '297 device to include multiple apertures, one skilled in the art would ignore this purported "teaching" as being inaccurate and unreliable. Accordingly, the factually incorrect "teachings" of Nowacki would be disregarded by a person of skill in the art and the Examiner and Board's reliance on such "teachings" constitutes another basis for granting Appellant's request for rehearing of the Board's decision.

---

[9] The well known Beta ratio is generally defined as the ratio of the cross-sectional flow area of the restriction element to the internal pipe cross sectional area or pipe ID. It is well known that decreasing the Beta ratio (and thereby decreasing the cross sectional area of the flow path) increases the signal strength.

[10] Moreover, if one of ordinary skill in the art desired to obtain the stated advantage of a stronger signal, this person would have known to reduce the cross sectional area of the bore in some manner. This person would have also known that it doesn't particularly matter what configuration the reduced in cross sectional area takes, as long as the cross-sectional area is in fact reduced. Thus, one of ordinary skill in the art would put no credence in and would attach no importance to Nowacki's placement of the plurality of bores or even Nowacki's use of multiple bores as compared to a single bore, as this person would know that it is the reduction in the overall cross-sectional area of the bore that results in a stronger signal, not the configuration or placement of that flow area within the fluid line.

## Conclusion

In conclusion, the Board should grant a rehearing of its decision on appeal in this application, because the Board has failed to appreciate the importance of Appellant's arguments as to the manner in which the structural differences between a bore disposed in an elongated flow restriction element and an aperture disposed in a planar flow impedance element prevent the disclosure of Nowacki from amounting to a suggestion of or a teaching to substitute multiple apertures for a single aperture in a planar flow impedance means.

Still further, upon rehearing, the Board should reverse the Examiner's rejection of claims 1-15 and 20 as obvious over the cited art, as none of the cited art, including Nowacki, provides a disclosure of or a suggestion to substitute multiple apertures for the single aperture in the planar flow impedance means of the Kleven '297 device. In particular, the Nowacki device is not related to and does not include a planar flow impedance means. Additionally, there is no evidence in the record that the advantages obtained by the substitution of multiple bores for a single bore in the elongated flow restriction element would be applicable to or helpful in any manner in a device having a single aperture in a planar flow impedance element. Still further, there is no evidence in the record that a device having a planar flow impedance element with a single aperture experiences the problems purportedly overcome by Nowacki's structure. Moreover, even if the Kleven '297 device were to experience the problems addressed by the Nowacki device and even if substituting the multiple apertures for a single aperture would work to overcome these problems, the Nowacki disclosure still fails to provide the teaching found by the Board. In particular, when read as a whole, Nowacki clearly indicates that it is the use of a plurality of bores in combination with other important structural features that results in the purported advantages, not the use of multiple bores alone. Still further, the Nowacki disclosure cannot provide the teaching found by the Board because one skilled in the art would know that

the Nowacki statements as to the sizing of the multiple bores would not produce or result in the stated advantage.

Additionally, Appellants respectfully request an oral hearing upon the grant of a rehearing of the appeal.

Dated: November 29, 2005

Respectfully submitted,

By _____
Roger A. Heppermann.
   Registration No.: 37,641
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive, Suite 6300
Sears Tower
Chicago, Illinois 60606-6357
(312) 474-6300
Attorney for Appellant